Sarah Louise McCOY, on behalf of herself and others similarly situated,

v.

LOUISIANA STATE BOARD OF EDUCATION et al.

Civ. A. No. 2916.

United States District Court
E. D. Louisiana,
Baton Rouge Division.
May 20, 1964.

**736**

---

A. P. Tureaud, New Orleans, La., for plaintiff.

William P. Schuler, Asst. Atty. Gen., Baton Rouge, La., for defendants

WEST, District Judge.

This is a class action brought by petitioner, Sarah Louise McCoy, a Negro, on her own behalf, and on behalf of other Negroes similarly situated, seeking admission as a student to Northeast Louisiana State College. Petitioner contends that she has been illegally and unconstitutionally denied admission solely because of her race. This college, located in Monroe, Louisiana, was previously known as Northeast Center. Its name was changed to Northeast Louisiana State College by Act 527 of the Louisiana Legislature of 1950, which Act further provided, in part, as follows:

"Section 1. Be it enacted by the Legislature of Louisiana, that the name of Northeast Center, a junior college of Louisiana State University and Agricultural and Mechanical College, located at Monroe, in the Parish of Ouachita, Louisiana, an existing state institution, be changed to the name, Northeast Louisiana State College, and the Louisiana State Board of Education is directed to provide for said school, a school of higher education in the Arts and Sciences, for the education of white persons of the State of Louisiana.

"Section 2. That the Louisiana State Board of Education shall administer the affairs of said institution."

Petitioner names, among others, as a party defendant, the Louisiana State Board of Education.

The Louisiana State Board of Education was created by Act of the Louisiana Legislature [LSA–R.S. 17:1 (1950)] and was, at that time, specifically given the right to sue and be sued [LSA–R.S. 17:2 (1950)]. However, by amendment to the Louisiana Constitution, this right to sue and be sued without consent of the State was specifically withdrawn. In 1956, Article XIX, Section 26, of the Louisiana Constitution (1921) LSA, was amended to read as follows:

"Section 26. The following named commissions, boards, bodies or municipal corporations are and shall be considered special agencies of the State of Louisiana:

\*  \*  \*  \*  \*  \*

"(5) The State Board of Education,

\*  \*  \*  \*  \*  \*

"The consent of the State of Louisiana to suits or legal proceedings against any of the above listed special agencies, (however heretofore given) is hereby expressly withdrawn and no such suit or proceedings shall be permitted except as provided in this section. \* \* \* "

Thus, under the provisions of the Louisiana Constitution as it presently stands, the Louisiana State Board of Education is declared to be a special agency of the State of Louisiana, and is not amenable to suit unless consent is first obtained from the State of Louisiana.

Petitioner, in the present suit, did not name as defendants the individual members of the Louisiana State Board of Education.

Respondents, in answer to petitioner's complaint, filed what amounted to a general denial, but also moved, both in their answer and orally in Court, for dismissal of this suit on the ground that this Court does not have jurisdiction over a suit brought against the Louisiana State Board of Education, since no consent for such suit had first been obtained by petitioner from the State of Louisiana, and

secondly, for failure of petitioner to join indispensable parties defendant, namely, the individual members of the Louisiana State Board of Education.

Hearing on defendants' motion to dismiss and also on plaintiff's motion for the issuance of a preliminary injunction was held on February 14, 1964, when, because of the complexity of the legal problem involved, the matter was taken under advisement by the Court. Now, after careful consideration of the applicable law, the arguments of counsel, and the briefs filed herein, the Court is of the opinion that it cannot, at this time, pass upon the merits of petitioner's claim. Petitioner has improperly joined as a defendant the Louisiana State Board of Education, and has failed to join as parties defendant certain indispensable parties, namely, the individual members of the Louisiana State Board of Education.

This Court is not unmindful of the decisions previously rendered in such cases as Louisiana State Board of Education v. Allen, 287 F.2d 32 (C.A. 5 1961); Board of Supervisors of L. S. U. v. Fleming, 265 F.2d 736 (C.A. 5 1959); Board of Supervisors of L. S. U. v. Ludley, 252 F.2d 372 (C.A. 5 1958); and Orleans Parish School Board v. Bush, 242 F.2d 156 (C.A. 5 1957). All of these Appellate Court decisions allowed suits to be brought directly against such agencies of the state government as the Louisiana State Board of Education, the Board of Supervisors of Louisiana State University, and the Orleans Parish School Board. However, this Court feels that it must be bound by what it considers to be contrary holdings by the United States Supreme Court in such cases as Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L. Ed. 714 (1907) and other related cases hereinafter referred to. It has been consistently held by the United States Supreme Court that pursuant to the provisions of the Eleventh Amendment to the United States Constitution, a sovereign state cannot be sued without its consent. It has also been held many times that an agency of the federal government, absent express consent to the contrary, cannot

be sued, because to hold otherwise would impinge upon the sovereignty of the United States Government. Taft Hotel Corp. v. Housing and Home Finance Agency, 262 F.2d 307 (C.A. 2 1958); New Haven Public Schools v. General Services Administration, 214 F.2d 592 (C.A. 7 1954); Love v. Royall (Department of the Army), 179 F.2d 5 (C.A. 8 1950); United States Department of Agriculture v. Hunter, 171 F.2d 793 (C.A. 5 1949); Herren v. Farm Security Administration, 153 F.2d 76 (C.A. 8 1946); Barnes v. United States (Bureau of Indian Affairs), 205 F.Supp. 97 (D.Mont.1962). But the several states are no less sovereign than the federal government. There simply cannot be one standard used to protect the sovereignty of the federal government, and another standard applied to suits against the sovereign states. A sovereign state simply cannot be made a defendant in a suit in a federal court, either by suing it directly, or by suing it indirectly through one of its agencies, without its express consent, without running afoul of the provisions of the Eleventh Amendment to the United States Constitution.

But just as it is well established that a state may not, either directly, or indirectly through its agencies, be sued without its consent, so is it equally well established that the individual members of a state or federal agency may be sued individually if they commit an illegal or unconstitutional act. Whenever the precise question has been presented to the Supreme Court, it has consistently held that in such cases the proper party defendant is the individual member of the agency and not the agency itself. It has consistently held that to sue the agency itself is tantamount to suing the sovereign state, and that such a suit is prohibited by the provisions of the Eleventh Amendment. As was stated in Ex parte Young, supra:

"In Smyth v. Ames, 169 U.S. 466, 8 S.Ct. 418, 42 L.Ed. 819, (another rate case), it was again held that a suit against individuals, for the purpose of preventing them, as officers of the state, from enforcing, by the

commencement of suits or by indictment, an unconstitutional enactment, to the injury of the rights of the plaintiff, was not a suit *against a state*, within the meaning of the Amendment. * * * 'It is the settled doctrine of this court that a suit against individuals, for the purpose of preventing them, as officers of a state, from enforcing an unconstitutional enactment, to the injury of the rights of the plaintiff, is not a suit against the state within the meaning of that Amendment.' "

Even though this may be considered as creating an unnecessary fiction in the law, nevertheless the fiction has been preserved and applied throughout a long, unbroken line of decisions. In Blackmar v. Guerre, 342 U.S. 512, 72 S.Ct. 410, 96 L. Ed. 534 (1952), while holding that neither the Veterans Administration nor the United States Civil Service Commission could be sued without the sovereign's consent, the Supreme Court said:

"When Congress authorizes one of its agencies to be sued *eo nomine,* it does so in explicit language, or impliedly because the agency is the offspring of such a suable entity. * * Since the Civil Service Commission is not a corporate entity which Congress has authorized to be sued, a suit involving the action of the Commission generally must be brought against the individual Commissioners as members of the United States Civil Service Commission. No such suit was brought here, and no service was had upon the individuals comprising the Civil Service Commission. Therefore, neither the individuals comprising the Civil Service Commission nor the Commission was a suable entity was before the District Court."

As was cogently pointed out in Administrative Law Treatise, Davis (1958) Section 27.01, suing an individual state officer is in reality a suit against the state, but, for the sake of public policy, the Courts have created the fiction of allowing an individual state officer to be sued, and have declared that this is not a suit against the sovereign. Unless and until the United States Supreme Court holds otherwise, this Court is bound to require that this established procedure be followed. To do otherwise is to completely disregard the rulings of the Supreme Court, the Eleventh Amendment to the United States Constitution, and Article XIX, Section 26 of the Louisiana Constitution. The doctrine of the unsuability of the state and its agencies, and the suability of the individual members of state boards and agencies must be applied consistently to all such suits, whether they involve suits against agencies of the federal government, or suits against agencies of a state government. The sovereignty of the state must be protected, and its immunity from suit without its consent as proclaimed by the Eleventh Amendment must be recognized.

■■ Many of the cases previously cited herein wherein the Courts have allowed a petitioner to bring suit directly against various school boards and other such state agencies have apparently either directly or indirectly relied on School Board of City of Charlottesville, Va. v. Allen, 240 F.2d 59 (C.A. 4 1956). But that case is inapposite here, because a reading thereof clearly indicates that there was apparently no express limitation on the power of that particular school board to sue or be sued. The Court in that case refers to the "corporate powers" of the board, and indicates the existence of no limitation thereon. In the present case, by express provision of the Louisiana Constitution (1921), Article XIX, Section 26, the State Board of Education has no power to sue or be sued without the consent of the State of Louisiana. It is simply not an entity separate and apart from the State of Louisiana. The Fifth Circuit Court of Appeals has held that the question of whether or not a complaint in itself has sufficiently stated a cause of action is a question of federal law, Board of Supervisors of Louisiana State University v. Ludley, supra, but that whether or not a particular agency of the state government has sufficient

autonomy to be sued as an entity separate from the state itself is a question of state law. Kirby Lumber Corp. v. State of Louisiana, 293 F.2d 82 (C.A. 5 1961); Louisiana Land and Exploration Company v. State Mineral Board, 229 F.2d 5 (C.A. 5 1956); Department of Highways of Louisiana v. Morse Bros. and Associates, 211 F.2d 140 (C.A. 5 1954); Louisiana Highway Commission v. Farnsworth, 74 F.2d 910 (C.A. 5 1935). We cannot apply one standard to ordinary contract or tort suits, and another standard to matters designated as civil rights litigation. Louisiana law clearly prohibits a suit against the Louisiana State Board of Education without the consent of the state. Such consent has not been given. Waiver of a state's immunity from suit is not to be lightly inferred. Petty v. Tennessee-Missouri Bridge Commission, 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959).

In Louisiana Land and Exploration Company v. State Mineral Board, supra, it was argued that a suit could be brought against a state agency that had wrongfully exceeded its authority. But the Fifth Circuit Court of Appeals disagreed, saying:

"This contention is likewise without merit for the reason that the complaint is directed against the State Mineral Board in its official capacity, not against its members individually * * *. It is therefore plain that the State Mineral Board cannot be enjoined in this suit since the compulsion which the Court is asked to impose would be compulsion against the sovereign; and for that reason the suit is barred by the Eleventh Amendment, not because it is a suit against the Board, but because it is, in effect, a suit against the State."

■■ If the governmental entity sued is not a juridical person or a separate corporate entity with power to sue and be sued, the suit is, in essence, one against the sovereign and cannot stand. United States Department of Agriculture v. Hunter, 171 F.2d 793 (C.A. 5 1949).

It is equally well settled that when the individual members of a school board or other such government agency are sued in their individual capacity for violating the law or performing some unconstitutional function, they are proper parties defendant and the Federal Court, in such instance, does have jurisdiction. Shuttlesworth v. Birmingham Board of Education, 162 F.Supp. 372, (N.D.Ala.1958) aff. 358 U.S. 101, 79 S.Ct. 221, 3 L.Ed.2d 145 (1958); Miller v. Board of Education, 106 F.Supp. 988 (D.C.1952). In Ex parte Young, supra, the United States Supreme Court, said:

"If the act which the state attorney general seeks to enforce be a violation of the Federal Constitution, the officer, in proceeding under such enactment, comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct."

■ Thus it is apparent that pursuant to the doctrine followed by the United States Supreme Court in Ex parte Young, while failure of the individual members of the Board of Education to abide by the law does not create a right of action against the Board itself, it may give rise to a right of action against the individual members of the Board who have allegedly acted illegally and in violation of the United States Constitution. To allow such a suit as this to be brought in a Federal Court directly against an agency of the state, where by specific state constitutional provision, such a suit is forbidden, could have drastic results. If such a suit is permitted, it could just as logically be argued that suit may be brought in a Federal Court against the Supreme Court of the State of Louisiana, as a body, or against the State Legislature as a body. It was just such actions as these, and such actions as embodied in the present litigation, that the Eleventh Amendment to the United States Constitution sought to pro-

·hibit. It seems to me that a rather anomalous situation is created when, under the guise of protecting petitioner's right to the equal protection of the law, the State of Louisiana is deprived of its right to due process of law by casting established and well recognized rules of procedure to the four winds and by completely ignoring both the pertinent provisions of the Louisiana Constitution and the Eleventh Amendment to the United States Constitution. Petitioner's right to equal protection of the law can and must be protected. But the established rights of a sovereign state cannot be run over roughshod in the process. The means for protecting petitioner's rights are available and well defined. The law, as enunciated by the Supreme Court of the United States, is clear. Petitioner, in pursuing her constitutionally guaranteed rights, must follow established procedures, with due regard to the constitutionally protected rights of others, including the State of Louisiana.

Under the facts of this case, the Louisiana State Board of Education is not amenable to suit in a Federal Court. If redress is sought as a result of the actions of the members of the Board, those members must be sued individually. The Court must not allow the merits of the case to assume such proportions as to make it blind to the constitutional prohibition of a suit against an unconsenting sovereign.

Therefore, without at this time passing upon the merits of petitioner's application for the issuance of a preliminary injunction, the motion of respondents to dismiss this suit insofar as the defendant, Louisiana State Board of Education, is concerned must be granted, and this suit must be dismissed as to that defendant. It is further held that the individual members of the Louisiana State Board of Education are indispensable parties to this suit. But rather than dismiss plaintiff's suit for failure to join these indispensable parties, petitioner will be given sixty (60) days within which to make the individual Board mem-

bers parties defendant, and failing to do so within the time allowed, this suit will, in that event, be dismissed.

Judgment will be entered in accordance herewith.